IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 4:19CR576 |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES REARDON, | ) | RESPONSE IN OPPOSITION TO |
| | ) | DEFENDANT'S APPEAL FROM AND |
| Defendant. | ) | OBJECTIONS TO MAGISTRATE |
| | ) | JUDGE'S ORDER OF DETENTION |

Now comes the United States of America, by and through its counsel, Justin Herdman, United States Attorney, and David M. Toepfer and Ranya Elzein, Assistant United States Attorneys, and respectfully submits the following response is Opposition to Defendant's Appeal from and Objections to Magistrate Judge's Order of Detention, Doc. No. 23.

**I.    Statement of Facts**

    **A.    Procedural History**

On August 19, 2019, the United States charged Defendant James Reardon ("Reardon") by way of a complaint with Transmitting Threatening Communications via Interstate Commerce, in violation of 18 U.S.C. § 875(c).  Complaint, Doc. No. 1.

On September 12, 2019, Magistrate Judge Limbert held a detention hearing, after which he ordered Reardon detained pending trial on the ground that no conditions of release would ensure the safety of the community.  Detention Order, Doc. No. 16.

On September 26, 2019, a grand jury returned an indictment charging Reardon with one count of Transmitting Threatening Communications via Interstate Commerce, in violation of 18

U.S.C. § 875(c), and an additional count of Possession of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c). Indictment, Doc. No. 20.

Reardon now objects to Magistrate Judge Limbert's detention order and appeals to this Court.

### B. Detention Hearing

The evidence at the detention hearing included the complaint and supporting affidavit dated August 19, 2019, the Pretrial Services Report, and the testimony of Special Agent Thomas Donnelly, Reardon's parents, and Reardon's friend. This evidence established the following.

On August 16, 2019, law enforcement became aware of a video posted to Reardon's Instagram account, "ira_seamus," on July 11, 2019. Complaint Aff. 2, Doc. No. 1-1. The video depicted Reardon holding an assault rifle. *Id*. At the beginning of the video, Reardon shouted a German phrase known to be a German war hymn. Trans. 7, Doc. No. 19.[1] The video then shows Reardon holding the rifle in multiple firing positions with audio of gunshots and sound effects of sirens and people screaming added into the background. Complaint Aff. 2, Doc. No. 1-1. The video also had a caption that stated, "ira_seamus Police identified the Youngstown Jewish Family Community shooter as local white nationalist Seamus O'Rearedon." *Id*. at 2-3. The video was tagged at the Jewish Community Center of Youngstown, Ohio. *Id*. at 3.

Reardon's friend, Logan Stewart, recorded the video in early 2018 at a police shooting range. Trans. 51-52, Doc. No. 19. Stewart edited the video to add sirens and screams, and sent

---

[1] Although the Complaint stated that Reardon said "Fuck a Life," agents later learned that he said "I need a Radio Man," a German military phrase. *See* Complaint Aff. 2, Doc. No. 1-1; Trans. 7, Doc. No. 19.

Reardon both the edited and unedited versions. *Id*. at 54-56. Stewart did not add the caption insinuating a mass shooting; Reardon did. *Id*. at 59-60.

After discovering the video, law enforcement searched Reardon's house and found a MP-40 submachine gun similar to that used in the video, an M-16 firearm similar to a Vietnam era model, an M-16 pellet gun with a bayonet attached to the end of it, a Hitler youth knife, Nazi World War Two propaganda posters, and vintage U.S. military equipment. *Id*. at 13-14; Complaint Aff. 3, Doc. No. 1-1.

Law enforcement interviewed Reardon, who admitted to posting the video and took ownership of the MP-40 sub-machine gun and AR-15. Complaint Aff. 4, Doc. No. 1-1. He also stated that he attended the Unite the Right Rally in Charlottesville, Virginia in August, 2017. *Id*. This Rally "was a protest involving white supremacists, white nationalists, [and] neo-Nazis . . . protesting the removal of the confederate statutes from that area and from other areas in the South." Trans. 8, Doc. No. 19. The Rally turned violent between the white supremacist group and counter protesters, and James Fields drove his car into a group of counter-protesters, killing one individual. *Id*. at 9.

Reardon's father testified that Reardon was an average child with no violent tendencies. *Id*. at 31-32. He was in boy scouts and a history buff, and his father did not consider him a threat. *Id*. at 32-36. Reardon's mother testified that Reardon is a "great kid" with "a quirky sense of humor" and no violent tendencies. *Id*. at 41, 43. She stated that if released, Reardon could stay with her. *Id*. at 46.

But evidence presented by the government at the hearing contradicts these accounts. Specifically, photographs depict Reardon participating in the United the Right Rally and exhibiting violent tendencies, and other media demonstrates his belief in a white state. One

photograph depicts Reardon at the Rally holding a shield and a pole that previously held the flag of a white supremacist group. *Id*. at 11; Gov. Ex. 1, Doc. No. 24-1. That shield was from a white supremacist organization. Trans. 9, Doc. No. 19. Reardon identified a Neo-Nazi shield found in his basement as being from the Rally. Complaint Aff. 4, Doc. No. 1-1. Another photograph depicts Reardon holding the same shield standing behind a group of "Alt. Right" protestors pushing against the riot control police. *Id*. at 11–12. Gov. Ex. 2, Doc. No. 24-2. A screenshot from a video taken at the Rally depicts Reardon holding an expandable police baton "in a threatening manner as if he is about ready to strike somebody." Trans. 12–13, Doc. No. 19. Relatedly, there is footage of Reardon at the Rally "espousing some racial epithets to the other side." *Id*. at 13. Additionally, Reardon conducted an interview for National Geographic in which he "is expressing his views on white nationalism and his beliefs in having a white ethno state in this country." *Id*. at 10.

After considering all of this evidence, Magistrate Judge Limbert ordered Reardon detained on the ground that there is a serious risk that he will endanger the safety of another person or the community. Detention Order 1, Doc. No. 16. Judge Limbert based that finding on the nature and circumstances of the offense and Reardon's history and characteristics: "[Reardon] poses a serious risk of danger to the safety of the community if he is released in light of the very serious nature of the offense charged regarding the video, [Reardon's] participation in the Charlottesville white supremacist rally . . ., and his possession of Nazi memorabilia and weapons." *Id*. at 2. In so doing, Judge Limbert emphasized that Reardon posted a video tagged the Jewish Community Center depicting him shooting two rounds of ammunition with screaming and sirens in the background and created a caption relating to the JCC and a mass shooting. *Id*. For the following reasons, the Court should overrule Reardon's objections to Judge Limbert's

4

order.

**II.     Argument**

The Court should overrule Reardon's objection to the detention order because the Magistrate Judge correctly found that Reardon posed a danger to the community.  Moreover, Reardon has failed to rebut the applicable presumption of detention that arose after he was indicted with a violation of 18 U.S.C. § 924(c).

This Court reviews a Magistrate Judge's detention order *de novo*. *United States v. Pritchard*, No. 5:08MJ5017, 2008 WL 920434, at *1 (N.D. Ohio Apr. 3, 2008). "[M]eaningful *de novo* review means that the district court should engage in the same analysis, with the same options, under § 3142 as the magistrate judge." *Id.* (internal quotation marks and citation omitted).

Under § 3142, the Court must detain a defendant if it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." 18 U.S.C.  § 3142(e).  In cases involving an offense under 18 U.S.C. § 924(c), a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person or the community applies.  18 U.S.C. §§ 3142(e)(3)(B).

In considering whether detention is proper, the Court considers: (1) the nature and circumstances of the offense, (2) the weight of the evidence of the crime charged, (3) the defendant's history and characteristics, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

At the time of the detention hearing, Reardon was not charged with a violation of 18 U.S.C. § 924(c), and thus, the presumption that he poses a danger to the community did not

5

apply.  The presumption applies now, however, because the Court considers the issue of detention *de novo* and Reardon has since been charged with a § 924(c) violation.  A consideration of the relevant factors demonstrates that Reardon has failed to rebut that presumption of detention.

### A.    Nature and Circumstances of the Offense

The nature and circumstances of the offense warrant detention.  As the Magistrate Judge found, the nature and circumstances of the offense are serious, and they are also violent.  Reardon posted a video on social media suggesting that he was responsible for a mass shooting at the Jewish Community Center in Youngstown ("JCC").  The video depicts him shooting a firearm with sirens and screams in the background and him shouting a German war phrase.  He chose to post this video, even though he had an unedited version, caption it to suggest his responsibility for a mass shooting, and tag the JCC.  He made a serious, realistic, fatal threat to an entire community.  His access to firearms, including one similar to that which he is seen shooting in the video, made such a threat even more dangerous to the safety of the community.  Such circumstances therefore support detention.

### B.    Weight of the Evidence

The weight of the evidence against Reardon is strong and warrants detention.  Reardon's friend testified that he recorded the video, edited it, and sent both versions to Reardon, who captioned and posted the video.  Reardon admitted to posting the video and took ownership of the firearms found in his home.  Reardon's intent to communicate a threat by posting the video is evidenced by the content of the video and his white supremacist beliefs.  The weight of the evidence thus supports detention.

6

### C. History and Characteristics

Reardon's history and characteristics also support detention. The Magistrate Judge correctly found that although Reardon has no prior criminal history, his participation in the Unite the Right rally, his demonstration of violent tendencies coupled with his white supremacist beliefs, and his possession of weapons collectively indicate a serious risk of violence.

In so doing, the Magistrate Judge did not simply hold Reardon's beliefs against him. Reardon's attendance at the Unite the Right Rally and possession of a shield and baton when pushing back against riot police demonstrates his willingness to use force in support of his white supremacist beliefs. His possession of firearms and Nazi memorabilia increases the likelihood that he would carry out a violent act like the one threatened in the video. In light of these facts, Reardon's lack of criminal history, which is not surprising given his young age, carries little weight. Accordingly, his history and characteristics weigh in favor of detention.

### D. The Nature and Seriousness of the Danger to Any Person or the Community that Would be Posed by Reardon's Release

For all of the reasons discussed above, Reardon's release would pose a serious risk to the safety of the Jewish community in Youngstown, Ohio.

Taken together, all four factors weigh in favor of detention on the ground that no combination of conditions of Reardon's release will ensure the safety of the community. In short, Reardon espouses white supremacist beliefs and has demonstrated violent tendencies in support of those beliefs in the past. That, along with his access to weapons and his threat to the JCC, creates the serious risk that he will be a danger to the community if released. Indeed, there is a statutory presumption that he poses such a danger, and Reardon has failed to produce evidence sufficient to rebut that presumption. His participation in boy scouts and his parents' testimony that he is not a threat is simply insufficient; in fact, the government's evidence of

Reardon's prior conduct belies his parents' characterization of him.  Accordingly, the Court should order that Reardon remain detained.

### III. Conclusion

For the foregoing reasons, the Court should overrule Reardon's objection to the Magistrate Judge's detention order.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By: /s/ Ranya Elzein
Ranya Elzein (OH: 0090887)
David M. Toepfer (OH: 0068008)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3929
(216) 522-8355 (facsimile)
Ranya.Elzein@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of October 2019 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

/s/ Ranya Elzein
Ranya Elzein
Assistant U.S. Attorney