**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**


| | | |
|---|---|---|
| **United States of America,** | ) | **CASE NO. 4:19 CR 576** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **James Reardon,** | ) | **Order** |
| | ) | |
| **Defendant.** | ) | |


**Introduction**

This matter is before the Court upon defendant's Appeal from and Objections to Magistrate Judge's Order of Detention (Doc. 23).  For the following reasons, the Court overrules defendant's objections to Magistrate Judge Limbert's detention order.

**Facts**

**Procedural History**

On August 19, 2019, defendant James Reardon was charged, by way of a complaint, with Transmitting Threatening Communications via Interstate Commerce, in violation of 18 U.S.C. §

1

875(c). On September 12, 2019, Magistrate Judge Limbert held a detention hearing, after which he ordered defendant detained pending trial on the ground that no conditions of release would ensure the safety of the community. (Order of Detention, Doc. 16) On September 26, 2019, a grand jury returned an indictment charging defendant with one count of Transmitting Threatening Communications via Interstate Commerce, and an additional count of Possession of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c).

### **Detention Hearing**

The evidence at the detention hearing included the August 19, 2019 complaint and supporting affidavit of FBI Special Agent (SA) Thomas Donnelly, the Pretrial Services Report, and the testimony of SA Donnellly, defendant's parents, and defendant's friend (Logan Stewart), which established the following.

On August 16, 2019, law enforcement became aware of a video posted to defendant's Instagram account, "ira_seamus," on July 11, 2019, which depicted defendant holding an assault rifle and shouting a German phrase meaning "I need a radio man."  SA Donnelly understood the phrase to be a German war hymn. The video shows defendant  holding the rifle in firing positions, with audio of gunshots and sound effects of sirens and people screaming added into the background.  The video had a caption that stated, "ira_seamus  Police identified the Youngstown Jewish Family Community shooter as local white nationalist Seamus O'Rearedon." The video was tagged at the Jewish Community Center (JCC) of Youngstown, Ohio.

Defendant's friend, Logan Stewart, recorded the video in early 2018 at a police shooting range, edited the video to add sirens and screams, and sent defendant both the edited and unedited versions. Stewart did not add the caption insinuating a mass shooting.  Defendant did

so.

After discovering the video, law enforcement searched defendant's house and found an MP-40 submachine gun similar to that used in the video, an M-16 firearm similar to a Vietnam era model, an M-16 pellet gun with a bayonet attached to the end of it, a Hitler youth knife, Nazi World War Two propaganda posters, and vintage U.S. military equipment.

Law enforcement interviewed defendant, who was arrested without incident, and he admitted to posting the video and stated the MP-40 sub-machine gun and AR-15 were his. He also stated that he attended the Unite the Right Rally in Charlottesville, Virginia in August, 2017. SA Donnelly described the rally as "a protest involving white supremacists, white nationalists, neo-Nazis that had gathered in Charlottesville, Virginia.  Part of the protest was protesting the removal of the confederate statutes [sic] from that area and from other areas in the South."  The rally had turned violent between the white supremacist group and counter protesters, resulting in the death of one of the counter protesters.

Defendant's father testified that defendant was a "regular child" and average student with no violent tendencies. He was in boy scouts, became an Eagle Scout, and was a history buff.  He did not consider him a threat and he stated that defendant would live with his mother if released from detention. Defendant's mother, with whom defendant was living at the time of his arrest, testified that defendant was a "great kid" with "a quirky sense of humor" and no violent tendencies.  She stated that if released, defendant could live with her.

SA Donnelly testified that photographs of the rally depict defendant's participation in it while exhibiting violent tendencies such as holding a shield from a white supremacist organization and a pole that previously held the flag of a white supremacist group.  Defendant

3

identified the Neo-Nazi shield found in his basement as being from the rally. Another photograph depicted defendant holding the same shield standing behind a group of "Alt. Right" protestors pushing against the riot control police.  A screenshot from a video taken at the rally depicted defendant holding an expandable baton "in a threatening manner as if he is about ready to strike somebody."  There was also video footage of defendant "espousing some racial epithets to the other side."  Finally, a video showed defendant conducting an interview for National Geographic in which he "is expressing his views on white nationalism and his beliefs in having a white ethnostate in this country."

The Order of Detention states that "no conditions or combination of conditions will reasonably assure the safety of the community if Defendant is released." In ordering defendant detained, Magistrate Judge Limbert concluded that while defendant had no prior criminal history, the evidence showed that he was a serious risk of danger in light of the very serious nature of the offense charged regarding the video, his participation in the Charlottesville white supremacist rally, and  his possession of Nazi memorabilia and weapons.  The Magistrate Judge emphasized that defendant posted the video and tagged the Jewish Community Center depicting him shooting two rounds of ammunition with screaming and sirens in the background and created a caption relating to the JCC and a mass shooting.

This matter is now before the Court upon defendant's Appeal from and Objections to Magistrate Judge's Order of Detention.

**Standard of Review**

"This Court conducts a *de novo* review of a Magistrate Judge's detention order." *United States v. Xiaorong You,* 2019 WL 2426659 (E.D.Tenn. June 10, 2019) (citing *United States v.*

4

*Villegas*, 2011 WL 1135018, at *4 (E.D. Tenn. Mar. 25, 2011) and *United States v. Romans*, 2000 WL 658042, at *1 (6th Cir. May 9, 2000)).

**Discussion**

For the following reasons, the Court agrees with the government that defendant's objections to the Order of Detention must be overruled.

"Title 18 U.S.C. § 3142 governs the release or detention of a federal defendant pending trial. In general, "[t]he default position of the law ... is that a defendant should be released pending trial." *United States v. Baltazar-Martinez*, 2019 WL 3068176 (E.D.Mich. July 12, 2019) (quoting *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)). "However, a defendant may be detained pending trial if a judge 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *Id.* (quoting 18 U.S.C. § 3142(e)).

In determining whether no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community, the Court considers: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant; and (iv) the nature and seriousness of the danger posed by the defendant's release. 18 U.S.C. § 3142(g).

Section 3142(e) also provides for a "rebuttable presumption" supporting an order of detention with respect to certain charged offenses including an offense under 18 U.S.C. § 924(c). 18 U.S.C. § 3142(e)(3)(B).

Defendant maintains that the Magistrate Judge failed to give proper weight to his lack of criminal record, his status in the Scouts, his record in school, and the fact that the Pretrial

5

Services Report recommended that he be released with minimal conditions. To the contrary, defendant asserts, the Magistrate Judge gave too much weight to his participation in the rally which occurred two years earlier and ignored the testimony that his beliefs have changed. In sum, defendant argues that there is no evidence that he poses a threat and the evidence shows that he is being held for his past political views. Further, the fact that he was arrested without incident and voluntarily spoke with law enforcement without counsel belies a finding that he would flee.

Initially, the Court notes that the government is correct in pointing out that defendant fails to rebut the applicable presumption of detention which arose after he was indicted with the § 924(c) violation. Although this charge was added after the detention hearing, the *de novo* review requires that the Court consider this issue anew. Moreover, the Court finds consideration of the § 3142 factors to warrant detention.

As to the nature and circumstances of the offense charged, the Court agrees with the Magistrate Judge that this factor weighs in favor of detention given the seriousness of and violent nature of the offense. Defendant posted a video suggesting that he was responsible for a mass shooting at a JCC. The video depicted defendant firing a weapon accompanied by screams and sirens, and defendant's use of a German phrase which the FBI agent believed to be a German war hymn. He tagged the JCC and had access to firearms, including one similar to that which is seen in the video.

The weight of the evidence against the defendant also supports detention. Defendant captioned and posted the video, and admitted that the firearms found in his home belonged to him. The white supremacist beliefs as evidenced in the hearing along with posting the video

6

shows an intent to communicate a threat to the community.

While defendant had no prior criminal history, the evidence shows that his history and characteristics also support detention given his participation in the rally, his possession of a shield and baton there, and his action in pushing back the riot police which demonstrate a willingness to use force in support of his white supremacist beliefs. Additionally, defendant possessed firearms and Nazi memorabilia which increases the likelihood that he would carry out a violent act like the one threatened in the video.

Finally, the nature and seriousness of the danger posed by the defendant's release warrants detention given the risk to the safety of the Jewish community in Youngstown, Ohio.

The Court finds that the four factors weigh in favor of detention and that no combination of conditions of release would ensure the safety of the community.

**<u>Conclusion</u>**

For the foregoing reasons, defendant's Appeal from and Objections to Magistrate Judge's Order of Detention is overruled.  Magistrate Judge Limbert's Order of Detention is affirmed.

IT IS SO ORDERED.


 /s/Patrcia A. Gaughan
PATRICIA A. GAUGHAN
United States District Court
Date:      10/29/19          Chief Judge

7