IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 4:19CR576 |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES REARDON, | ) | GOVERNMENT'S NOTICE OF INTENT |
| | ) | TO USE CERTAIN EVIDENCE ON |
| Defendant. | ) | FEDERAL RULE OF EVIDENCE 404(B) |

The United States of America, by and through its counsel, Justin E. Herdman, United States Attorney, and David M. Toepfer and Ranya Elzein, Assistant United States Attorneys, respectfully submits the following notice of intent to introduce certain evidence at trial pursuant to Federal Rule of Evidence 404(b). Specifically, during the United States' case-in-chief, it intends to introduce the following evidence under Federal Rule of Evidence 404(b): (1) evidence of Reardon's attendance at the Unite the Right Rally in Charlottesville, Virginia in August 2017, including testimony, photographs, and video, and (2) Reardon's interview with National Geographic in which he expresses his views on white nationalism. For the following reasons, the Court should admit this evidence as relevant to Reardon's intent to communicate a true threat, a necessary element of 18 U.S.C. § 875(c).

I.      **Statement of Facts**

On September 26, 2019, a grand jury returned an indictment charging Reardon with one count of Transmitting Threatening Communications via Interstate Commerce, in violation of 18 U.S.C. § 875(c), and one count of Possession of a Firearm in Furtherance of a Crime of

Violence, in violation of 18 U.S.C. § 924(c). Indictment, Doc. No. 20. The following facts are relevant to the indictment.

On August 16, 2019, law enforcement became aware of a video posted to Reardon's Instagram account, "ira_seamus," on July 11, 2019. Complaint Aff. 2, Doc. No. 1-1. The video depicted Reardon holding an assault rifle. *Id*. At the beginning of the video, Reardon shouted a German phrase known to be part of a German war hymn. Trans. 7, Doc. No. 19. The video then shows Reardon holding the rifle in multiple firing positions with audio of gunshots and sound effects of sirens and people screaming added into the background. Complaint Aff. 2, Doc. No. 1-1. The video also had a caption that stated, "ira_seamus Police identified the Youngstown Jewish Family Community shooter as local white nationalist Seamus O'Rearedon." *Id*. at 2-3. The video was tagged at the Jewish Community Center of Youngstown, Ohio. *Id*. at 3.

Reardon's friend, Logan Stewart, recorded the video in early 2018 at a police shooting range. Trans. 51-52, Doc. No. 19. Stewart edited the video to add sirens and screams, and sent Reardon both the edited and unedited versions. *Id*. at 54-56. Reardon added to the edited version the caption insinuating a mass shooting. *Id*. at 59-60.

After discovering the video, law enforcement searched Reardon's house and found a MP-40 submachine gun similar to that used in the video, an M-16 firearm similar to a Vietnam era model, an M-16 pellet gun with a bayonet attached to the end of it, a Hitler youth knife, Nazi World War Two propaganda posters, and vintage U.S. military equipment. *Id*. at 13-14; Complaint Aff. 3, Doc. No. 1-1.

Law enforcement interviewed Reardon, who admitted to posting the video and took ownership of the MP-40 sub-machine gun and AR-15. Complaint Aff. 4, Doc. No. 1-1. He also stated that he attended the Unite the Right Rally (the "Rally") in Charlottesville, Virginia in

August, 2017.  *Id*.  This Rally "was a protest involving white supremacists, white nationalists, [and] neo-Nazis . . . protesting the removal of the confederate statutes from that area and from other areas in the South."  Trans. 8, Doc. No. 19.  The Rally turned violent between the white supremacist group and counter protesters, and James Fields drove his car into a group of counter-protesters, killing one individual.  *Id*. at 9.

Photographs depict Reardon participating in the Unite the Right Rally and exhibiting violent tendencies, and other media demonstrates his belief in a white state.  One photograph depicts Reardon at the Rally holding a shield and a pole that previously held the flag of a white supremacist group.  *Id*. at 11; Gov. Ex. 1, Doc. No. 24-1.  The shield was from a white supremacist organization.  Trans. 9, Doc. No. 19.  Reardon identified a Neo-Nazi shield found in his basement as being from the Rally.  Complaint Aff. 4, Doc. No. 1-1.  Another photograph depicts Reardon holding the same shield standing behind a group of "Alt. Right" protestors pushing against the riot control police.  *Id*. at 11–12.  Gov. Ex. 2, Doc. No. 24-2.  A screenshot from a video taken at the Rally depicts Reardon holding an expandable police baton "in a threatening manner as if he is about ready to strike somebody."  Trans. 12–13, Doc. No. 19.  Relatedly, there is footage of Reardon at the Rally "espousing some racial epithets to the other side."  *Id*. at 13.  Additionally, Reardon conducted an interview for National Geographic in which he expressed "his views on white nationalism and his beliefs in having a white ethno-state in this country."  *Id*. at 10.

## II.     Argument

Evidence of Reardon's participation in the Rally and his National Geographic interview ("the interview") is properly admissible under Federal Rule of Evidence 404(b).  Rule 404(b) sets forth a general prohibition on introducing "[e]vidence of a crime, wrong, or other act . . . to

prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence may be admissible, however, for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* If the proponent of such evidence demonstrates that the alleged "other acts" did occur and articulates a proper purpose for admission, the trial court then determines whether "the probative value of the identified purpose outweighs the risk of unfair prejudice." *United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000); *see also* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice.").

Here, "other purposes" support the admissibility of Reardon's participation in the Rally and his interview. As an initial matter, because the evidence comes from Reardon's own statements and actions, most of which were recorded, there is ample support that the "other acts" did in fact occur, and the initial step of the 404(b) inquiry is satisfied. Next, the Court must examine the purposes for admitting the evidence.

The purpose for admitting evidence of Reardon's participation in the Rally and his interview is to prove Reardon's intent to issue a true threat and his knowledge that his communication would be perceived as a true threat, as required by 18 U.S.C. § 875(c). Section 875(c) prohibits the transmission "in interstate or foreign commerce [of] any communication containing any threat to kidnap any person or any threat to injure the person of another . . . ." 18 U.S.C. § 875(c). In order to prove a violation of this provision, the government must prove that Reardon transmitted the communication either with the purpose of issuing a true threat or with knowledge that the communication would be understood as a true threat. *Elonis v. United States*, — U.S. —, 135 S. Ct. 2001, 192 L.Ed.2d 1 (2015). In

other words, the government must prove that Reardon's posting of the video insinuating a mass shooting at the Jewish Community Center was not merely a joke. Proving his intent and motive, then, is a proper purpose for admitting the evidence at issue.

The probative value of Reardon's own statements and actions outweighs any prejudicial impact. The evidence is highly probative because it goes directly to an element of the office—intent to commit a true threat—which is the primary contested issue in the case. *See United States v. Beamus*, 110 F. App'x 513, 516 (6th Cir. 2004) ("When specific intent is an element of an offense, the Government may introduce 404(b) evidence to establish that element, regardless of the defense the Defendant may have raised.") (citations omitted); *see also United States v. LaFontaine*, 847 F.3d 974, 981 (8th Cir. 2017) (evidence of prior threats admissible to prove primary contested issue of intent to communicate true threat); *United States v. Christy*, No. 3:18-CR-223, 2019 WL 636981, at *8 (M.D. Pa. Feb. 14, 2019) (evidence of defendant's issuance of additional threats is relevant to evidence his intent to issue the charged true threat).

The evidence admittedly carries a risk of prejudice because it suggests that Reardon is anti-Semitic. But, it is not *unfairly* prejudicial. The circumstances of Reardon's offense, posting a video threatening the Jewish Community Center while shouting a German war hymn, already suggests he held anti-Semitic views. Additional evidence of Reardon's beliefs would therefore not be *unfairly* prejudicial. Moreover, because Reardon's views are directly probative of an element of the offense at issue, the need to introduce the evidence outweighs the risk of any prejudice. *See, e.g.*, *United States v. Cox*, 957 F.2d 264, 267 (6th Cir. 1992) ("When probative evidence is offered that relates directly to a defense being raised, it is only the rare case in which such evidence would be excluded as being overly prejudicial."); *United States v. Mundle*, 700 F.

App'x 70, 72 (2d Cir. 2017) (upholding admission of testimony about the defendant's menacing behavior leading up to the charged threat because its probative value as proof of intent to issue a true threat outweighed any prejudice).  Indeed, even evidence that a defendant has committed other crimes can be properly admissible under Rule 404(b).  *See, e.g.*, *Beamus*, 110 F. App'x at 516-17 (upholding admission of evidence of prior controlled substance convictions to prove intent to further objective of conspiracy to possess with intent to distribute a controlled substance); *United States v. Harris*, 293 F.3d 970, 976 (6th Cir. 2002) (evidence of defendant's past involvement in the sale and distribution of crack cocaine was relevant to show his intent to distribute cocaine).  The evidence at issue here is not nearly as prejudicial as that found admissible in those cases and is properly admissible.

                                                                 Respectfully submitted,

                                                                 JUSTIN E. HERDMAN
                                                                United States Attorney

By:   */s/ Ranya Elzein*
       David M. Toepfer (OH: 0068008)
       Ranya Elzein (OH: 0090887)
       Assistant United States Attorney
       United States Court House
       801 West Superior Avenue, Suite 400
       Cleveland, OH 44113
       (216) 622-3929
       (216) 522-8355 (facsimile)
       Ranya.Elzein@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of December 2019, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

*/s/ Ranya Elzein*
Ranya Elzein
Assistant U.S. Attorney