**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **CASE NO.:   4:19-CR-00576** |
| PLAINTIFF | ) | |
| | ) | **JUDGE PATRICIA A. GAUGHAN** |
| V. | ) | |
| | ) | **MOTION IN LIMINE TO EXCLUDE** |
| JAMES REARDON, | ) | **GOVERNMENT'S USE OF PURPORTED** |
| | ) | **RULE 404(b) EVIDENCE** |
| DEFENDANT | ) | |

Now comes the Defendant, James Reardon, by and through Counsel, Ross Smith, and Edward

Czopur, and hereby moves this Honorable Court to preclude the introduction of purported Rule 404(b)

evidence at trial.  The indictment alleges that Mr. Reardon transmitted a communication containing a

threat to injure the person of another, and that he possessed a firearm in furtherance of the alleged

threat.  The government wishes to admit examples of character evidence in their case in chief.  All of

the evidence concerns conduct that occurred long ago, and none of it has anything to do with the crimes

charged.  The only purpose of this evidence is "to prove[] criminal disposition," U.S. v. Watford, 894

F.2d 665, 671, 29 Fed. R. Evid. Serv. 718 (4th Cir. 1990), and to prejudice the jury against Mr.

Reardon.  The government cannot be allowed to present evidence of Mr. Reardon's character that is

untethered to the crime charged.

The government argues that Mr. Reardon's attendance at a Rally in Charlottesville, Virginia and

an interview with news media at the Rally in August of 2017—two (2) years prior to the alleged

threat—is necessary to prove intent to issue a true threat and his knowledge that his communication

would be perceived as a true threat, as required by 18 U.S.C. § 875(c).  In the government's own words, "other purposes" support the admissibility of this character evidence.  However, there is no racist view exception to the character-evidence rule.  The same standards apply as in any other case, and the "story" of the crimes the government actually charged does not require a recounting of Mr. Reardon's attendance at a Rally, or any of the other bad acts alleged.  The government accuses Mr. Reardon of communicating a threat to injure a person and possessing a firearm during that threat.  In fact, the basis for the charges involves a past fictional event that had not taken place.  In an attempt at retribution, Mr. Reardon's ex-girlfriend pointed out the video to the New Middletown Chief of Police, Vince D'egidio, who then notified the FBI.  The video was posted on July 11, 2019, and one of two things occurred: (1) the video was not seen by anyone until Chief D'egidio viewed it on his office computer on August 16, 2019; or (2) the video was seen and was not taken as a threat.  Regardless of which of these scenarios took place, the government argues that the video of a fictional event, posted online, not viewed for more than one (1) month after the posting, but posted by someone who attended a protest rally in Charlottesville, Virginia two (2) years prior, shows evidence of intent of a "true threat".  The indictment returned by the grand jury defines specific and bounded alleged crimes.  By allowing the government the ability to use this character evidence, the case will focus far less on legality than on morality—inviting the jury to convict Mr. Reardon for who he is and what he has done in the past rather than for committing the crimes as charged.  The Court should not permit the government to circumvent the rules of evidence in its effort to achieve a guilty verdict.

In U.S. v. Mothershed, 859 F.2d 585, 588, 27 Fed. R. Evid. Serv. 162 (8th Cir. 1988), the court states the standard for evidence of prior bad acts under Federal Rule of Evidence 404(b) to be that: (1) the evidence be relevant to a material issue, (2) the prior bad acts be proved by a preponderance of the evidence, (3) the prior acts are similar in kind and reasonably close in time to the crime charged, and

(4) the potential prejudice of the evidence does not substantially outweigh its probative value according to the dictates of Federal Rule of Evidence 403.  In addition, the court stated,

> We consider 404(b) a rule of inclusion, permitting admission of such evidence unless it tends to prove only the defendant's criminal disposition." (Citations omitted) "But this does not mean that all such evidence is admissible simply on invocation of the Rule …

(Emphasis supplied)

In Huddleston v. U.S., 485 U.S. 681, 686, 108 S. Ct. 1496, 1499, 99 L. Ed. 2d 771, 25 Fed. R. Evid. Serv. 1 (1988), the court stated that "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character."  Further, in Huddleston, 485 U.S. at 689, the Supreme Court stated:

> This is not to say, however, that the government may parade past the jury a litany of potential prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo … Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case.

It is defendant's position that even if this court were to find the evidence relevant, Federal Rule of Evidence 403 would call for exclusion because: (1) its probative value is substantially outweighed by the danger of unfair prejudice it presents, (2) it would confuse the issues at trial, and (3) it would mislead the jury.  The Eighth Circuit recognized the problems inherent in such evidence being permitted to go before the jury in U.S. v. Bledsoe, 531 F.2d 888, 891, 1 Fed. R. Evid. Serv. 1115 (8th Cir. 1976):

> As Judge Sanborn stated in Paris v. U.S., 260 F. 529, 531 (C.C.A. 8th Cir. 1919): "Such evidence tends to draw the attention of the jury away from the consideration of the real issues on trial, to fasten it upon other questions, and to lead them unconsciously to render their verdict in accordance with their views on false issues rather than on true issues at trial."

3

As stated in U.S. v. McFadyen-Snider, 552 F.2d 1178, 1183, 1 Fed. R. Evid. Serv. 939 (6th Cir. 1977), "The real reason the prosecutor offered the testimony was to get before the jury incompetent and inadmissible evidence which was highly prejudicial and which deprived defendant of a fair trial."  In U.S. v. Bass, 794 F.2d 1305, 1312–1313, 21 Fed. R. Evid. Serv. 354 (8th Cir. 1986), the Eighth Circuit ruled, "The dictates of Rule 403 must still be applied to insure that the probative value of this evidence is not outweighed by its prejudicial value. (Citations omitted)."

Allowing the jury to hear any of the evidence with reference to other alleged bad acts would not only result in prosecutorial overkill, but the line between permissible and non-permissible evidence will be crossed and thus, the defendant would be prejudiced from receiving a constitutional right to a fair and impartial trial.  In U.S. v. Roark, 924 F.2d 1426 (8th Cir. 1991), the court stated:

> As the trial court admitted, however, a bell once rung is difficult to unring. Justice Brennan, opined on our human limitation to disregard that which we have heard: We agree that there are many circumstances in which this reliance is justified. Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instruction; instances occur in almost every trial where the inadmissible evidence creeps in, usually inadvertently … it is not unreasonable to conclude that in many cases the jury can and will follow the trial judge's instructions to disregard such information.  Nevertheless, as was recognized in Jackson v. Denno, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908, 1 A.L.R.3d 1205 (1964), there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and that the consequences of failure so vital to the defendant that the practical and human limitations of the jury system cannot be ignored.  Bruton v. U.S., 391 U.S. 123, 135, 88 S. Ct. 1620, 1627, 20 L. Ed. 2d 476 (1968).

If the government is allowed to mention, either directly or indirectly, anything regarding the rally in Charlottesville, Virginia or the interview with National Geographic, as stated in Roark, "The bell has been rung in that regard and you can't unring it."  Further, in Roark the court said in reversing the conviction, "Evidence of uncharged misconduct to show criminal propensity is inadmissible not because it is logically irrelevant, but because it is inherently and unfairly prejudicial."

4

**The Government's Proposed Evidence Is Inadmissible Under Rule 404(b)**

The government is seeking to admit classic character evidence.  The government's notice is an attempt to introduce character evidence, in hopes that the jury will convict Mr. Reardon of being a bad person rather than guilty of the charges.  But in our courts, "[a] defendant must be tried for what he did, not for who he is." U.S. v. Hodges, 770 F.2d 1475, 1479, 19 Fed. R. Evid. Serv. 364 (9th Cir. 1985); *see also* U.S. v. Mothershed, 859 F.2d 585, 589–590, 27 Fed. R. Evid. Serv. 162 (8th Cir. 1988) ("We do not convict people of crimes because of their propensities; we do so because of what they have actually done.").  Thus, under Rule 404(b), evidence of a "crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).  This rule reflects the "deep seated notion that our system of justice should not permit the trier of fact to infer that because someone was a bad guy once, he is likely to be a bad guy again." U.S. v. McCourt, 925 F.2d 1229, 1235–1236 n.2, 32 Fed. R. Evid. Serv. 358 (9th Cir. 1991); *see also* U.S. v. Daniels, 770 F.2d 1111, 1118, 18 Fed. R. Evid. Serv. 1113 (D.C. Cir. 1985) (noting that the character-evidence rule "gives meaning to the central precept of our system of criminal justice, the presumption of innocence").  When evidence of prior bad acts is admitted in a criminal trial, the jurors are apt to "prejudge" the defendant as "one with a bad character" and "deny him a fair opportunity to defend against a particular charge." Michelson v. U.S., 335 U.S. 469, 475–76, 69 S. Ct. 213, 93 L. Ed. 168 (1948) (Jackson, J.). Thus, when the government uses prior bad acts to suggest that a defendant committed the acts charged in the case at hand, the government asks the jury to make the kind of inference "specifically prohibited by Rule 404." Sparks v. Gilley Trucking Co., Inc., 992 F.2d 50, 53, 36 Fed. R. Evid. Serv. 1273 (4th Cir. 1993); *see* Bonilla v. Yamaha Motors Corp., 955 F.2d 150, 154, 34 Fed. R. Evid. Serv. 1052 (1st Cir. 1992).  That is exactly the inference the government hopes the jury will make here.  In its motion, the government is asking

5

that two types of prior acts evidence be admitted: (1) evidence of James Reardon attending the Unite the Right rally in Charlottesville, Virginia; and (2) evidence of James Reardon giving an interview to National Geographic while at the rally.   Both are inadmissible under Rule 404(b).

*Noticed Item #1—Attendance at Unite the Right Rally*

In its notice under Rule 404(b), the government suggests that it will offer evidence that James Reardon attended the Unite the Right rally in Charlottesville, Virginia in August of 2017.  The rally was to protest the removal of the statue of General Robert E. Lee from Charlottesville's former Lee Park.  The government argues that video and photos depict Mr. Reardon holding an expandable baton "in a threatening manner", holding a shield while standing behind a group of Alt. Right protestors, and espousing racial epithets.   The characterization was given at the preliminary hearing by the lead investigator in this case—**two (2) years after the rally**.

Given the government's vague description of its proposed evidence, it is difficult to know exactly what the government plans to tell the jury about this protest.  The government has focused its argument on the idea that Mr. Reardon's mere participation in the rally somehow demonstrates his intent to threaten someone two years after the fact.  Mr. Reardon has never been violent, threatened violence, or been convicted of a crime of violence.  Mr. Reardon attended a protest rally approximately two (2) years prior to the allegations before this Court and espoused purportedly questionable moral beliefs at that time, which, though they may offend the government's sensibilities, are not crimes.  The government has two (2) charges it may try to prove at trial.  And presenting that case to the jury in no way requires the government to delve into these other topics, which are nothing more than examples of inadmissible character evidence.   To admit such evidence as admissible for "other purposes" [Government's Notice of Intent, p. 4] to the crimes charged would simply be to allow forbidden character evidence "in more attractive wrapping and other a more enticing sobriquet." Thompson v.

U.S., 546 A.2d 414, 421 (D.C. 1988); *see also* U.S. v. McCallum, 584 F.3d 471, 477 (2d Cir. 2009) (declining to admit "propensity evidence in sheep's clothing").  And in any event, because this evidence is far more prejudicial than it is probative, it is inadmissible under Rule 403 as well.

*Noticed Item #2—Interview to National Geographic*

The government also says that it wishes to introduce evidence that James Reardon conducted an interview for National Geographic regarding his views on white nationalism and his beliefs in having a white ethno-state in this country. [Government's Notice of Intent, p. 3].  Given the government's vague description of its proposed evidence, it is difficult to know exactly what the government plans to tell the jury about these views.  But it is not difficult to know whether it is admissible.  This case is about what happened on July 11, 2019 and August 16, 2019; it is not about what happened at a protest two (2) years prior.  *See* U.S. v. Gonyer, 761 F.3d 157, 163 (1st Cir. 2014) (holding that evidence must be "near in time and place" to be admissible "to complete the story of the crime on trial").  Thus, evidence of what happened during a protest in Charlottesville, Virginia two (2) years prior—which was certainly not a threat nor threatening—could only be used for the purpose of suggesting that either the same thing happened here or that Mr. Reardon's character was of such a nature.  And those purposes are forbidden by Rule 404.  *See* U.S. v. Manning, 79 F.3d 212, 217, 44 Fed. R. Evid. Serv. 204 (1st Cir. 1996) ("[E]vidence of other crimes, wrongs, and acts is not admissible to prove criminal propensity.").

**The Government's Proposed Evidence Is Inadmissible Under Rule 403**

Even if evidence passes muster under Rule 404, it is not necessarily admissible.  *See* United States v. Sabean, 885 F.3d 27, 35, 105 Fed. R. Evid. Serv. 1301, 121 A.F.T.R.2d 2018-1127 (1st Cir. 2018) (holding that admissibility under Rule 404(b) is a "necessary—but not a sufficient—precondition for the admissibility of other-acts evidence").  A court must still evaluate the evidence under Rule 403.  *See* Fed. R. Evid. 404 Advisory Committee Notes (instructing courts evaluating evidence under Rule

404(b) to determine "whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision of this kind under Rule 403"); _Old Chief_, 519 U.S. at 182 ("There is … no question that …evidence of a prior conviction is subject to analysis under Rule 403 for relative probative value and for prejudicial risk of misuse as propensity evidence."); U.S. v. Sebaggala, 256 F.3d 59, 67, 57 Fed. R. Evid. Serv. 484 (1st Cir. 2001) (holding that Rule 404 "incorporates sub silentio the prophylaxis of Federal Rule of Evidence 403").

To the extent that the government's evidence has any probative value apart from inviting the forbidden propensity inference, that value is far outweighed by the prejudicial effect of this evidence. The government has no "actual need" for it.  U.S. v. Cook, 538 F.2d 1000, 1004, 1 Fed. R. Evid. Serv. 272 (3d Cir. 1976); Fed. R. 403 Advisory Committee Notes (noting that, when evaluating a 403 challenge, courts must consider "the government's actual need for the evidence"). It would encourage the jury to decide the case on "improper reasoning," U.S. v. Looking Cloud, 419 F.3d 781, 785, 68 Fed. R. Evid. Serv. 7 (8th Cir. 2005), namely that, because Defendant might have engaged in immoral conduct, he engaged in the charged conduct as well, _see_ Fed. R. 403 Advisory Committee Notes (defining unfair prejudice as "an undue tendency to suggest decision on an improper basis").  It would lead to a trial within a trial, in which Defendant was forced to simultaneously defend himself against the actual charges as well as explain Defendant's side of the government's side-show stories.  _See_ Blancha v. Raymark Industries, 972 F.2d 507, 516, Prod. Liab. Rep. (CCH) P 13262, 36 Fed. R. Evid. Serv. 435 (3d Cir. 1992) (holding that evidence is inadmissible under Rule 403 when "its admission would lead to litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues").  And any limiting or cautionary instruction is certain to be insufficient.  _See_ Rule 403 Advisory Committee Note (noting that courts must consider "the availability and

effectiveness" of a limiting instruction when "reaching a decision whether to exclude for unfair prejudice under Rule 403"); U.S. v. Figueroa, 618 F.2d 934, 5 Fed. R. Evid. Serv. 811 (2d Cir. 1980) (holding that courts must "carefully consider the likely effectiveness of a cautionary instruction that tries to limit the jury's consideration of the evidence to the purpose for which it is admissible").  Hence the Court should exclude this evidence under Rule 403 as well.

WHEREFORE, the Defendant, James Reardon, by and through Counsel, Ross Smith, and Edward Czopur, respectfully prays this Motion in Limine be granted, and that this Honorable Court direct the government and their witnesses not to make any mention either directly or indirectly of the August 2017 rally in Charlottesville, Virginia, or the interview with National Geographic, or attempt to impute Mr. Reardon's guilt on the current charges as a result of innuendo or speculation resulting from either the rally or the interview.  By allowing the government the ability to use this character evidence, the case will focus far less on legality than on morality—inviting the jury to convict Mr. Reardon for who he is and what he has done in the past rather than for committing the crimes as charged.  The Court should not permit the government to circumvent the rules of evidence in its effort to achieve a guilty verdict.

Respectfully Submitted,

*/s/ Ross Smith*

_____
**Ross T. Smith (0079786)**
Co-Counsel for Defendant
Huntington Bank Building
26 South Market St., Suite 610
Youngstown, OH 44503
Telephone:    800-457-9295
Facsimile:    800-910-6030
Email:        ross@rosssmithlaw.com

Respectfully Submitted,

*/s/ Edward Czopur*

_____
**Edward A. Czopur (0083314)**
Co-Counsel for Defendant
DeGenova & Yarwood, Ltd.
42 North Phelps St.
Youngstown, OH 44503
Telephone:    330-743-4116
Facsimile:    330-743-2536
Email:        Eddie640@aol.com

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that on December 9, 2019, a copy of foregoing Motion in Limine to Exclude Government's Use of Purported 404(b) Evidence was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's system.

    /s/  Ross T. Smith (0079786)
Co-Counsel for Defendant

    /s/  Edward A. Czopur (0083314)
Co-Counsel for Defendant