IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 4:19CR576 |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES REARDON, | ) | RESPONSE IN OPPOSITION TO |
| | ) | DEFENDANT'S MOTION IN LIMINE |
| Defendant. | ) | RELATIVE TO OTHER WEAPONS |
| | ) | |

Now comes the United States of America, by and through its counsel, Justin Herdman, United States Attorney, and David M. Toepfer and Ranya Elzein, Assistant United States Attorneys, and respectfully submits the following response in Opposition to Defendant's Motion in Limine Relative to Other Weapons, Doc. No. 31.

## I.     Statement of Facts

On September 26, 2019, a grand jury returned an indictment charging Reardon with one count of Transmitting Threatening Communications via Interstate Commerce, in violation of 18 U.S.C. § 875(c), and one count of Possession of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c). Indictment, Doc. No. 20. The following facts are relevant to the indictment.

On August 16, 2019, law enforcement became aware of a video posted to Reardon's Instagram account, "ira_seamus," on July 11, 2019. Complaint Aff. 2, Doc. No. 1-1. The video depicted Reardon holding an assault rifle. *Id.* At the beginning of the video, Reardon shouted a German phrase known to be part of a German war hymn. Trans. 7, Doc. No. 19. The video then

shows Reardon holding the rifle in multiple firing positions with audio of gunshots and sound effects of sirens and people screaming added into the background.  Complaint Aff. 2, Doc. No. 1-1.  The video also had a caption that stated, "ira_seamus Police identified the Youngstown Jewish Family Community shooter as local white nationalist Seamus O'Rearedon."  *Id*. at 2-3.  The video was tagged at the Jewish Community Center of Youngstown, Ohio ("JCC").  *Id*. at 3.

Reardon's friend, Logan Stewart, recorded the video in early 2018 at a police shooting range.  Trans. 51-52, Doc. No. 19.  Stewart edited the video to add sirens and screams, and sent Reardon both the edited and unedited versions.  *Id*. at 54-56.  Reardon added to the edited version the caption insinuating a mass shooting.  *Id*. at 59-60.

After discovering the video, law enforcement searched Reardon's house and found a MP-40 submachine gun similar to that used in the video, an M-16 firearm similar to a Vietnam era model, an M-16 pellet gun with a bayonet attached to the end of it, a Hitler youth knife, Nazi World War II propaganda posters, and vintage U.S. military equipment.  *Id*. at 13-14; Complaint Aff. 3, Doc. No. 1-1.

Law enforcement interviewed Reardon, who admitted to posting the video and took ownership of the MP-40 sub-machine gun and AR-15.  Complaint Aff. 4, Doc. No. 1-1.  He also stated that he attended the Unite the Right Rally (the "Rally") in Charlottesville, Virginia in August, 2017.  *Id*.  This Rally "was a protest involving white supremacists, white nationalists, [and] neo-Nazis . . . protesting the removal of the confederate statues from that area and from other areas in the South."  Trans. 8, Doc. No. 19.  The Rally turned violent between the white supremacist group and counter protesters, and James Fields drove his car into a group of counter-protesters, killing one individual.  *Id*. at 9.

Photographs depict Reardon participating in the Unite the Right Rally and exhibiting violent tendencies, and other media demonstrates his belief in a white state. One photograph depicts Reardon at the Rally holding a shield and a pole that previously held the flag of a white supremacist group. *Id*. at 11; Gov. Ex. 1, Doc. No. 24-1. The shield was from a white supremacist organization. Trans. 9, Doc. No. 19. Reardon identified a Neo-Nazi shield found in his basement as being from the Rally. Complaint Aff. 4, Doc. No. 1-1. Another photograph depicts Reardon holding the same shield standing behind a group of "Alt. Right" protestors pushing against the riot control police. *Id*. at 11–12. Gov. Ex. 2, Doc. No. 24-2. A screenshot from a video taken at the Rally depicts Reardon holding an expandable police baton "in a threatening manner as if he is about ready to strike somebody." Trans. 12–13, Doc. No. 19. Relatedly, there is footage of Reardon at the Rally "espousing some racial epithets to the other side." *Id*. at 13. Additionally, Reardon conducted an interview for National Geographic in which he expressed "his views on white nationalism and his beliefs in having a white ethno-state in this country." *Id*. at 10.

## II. Argument

The Court should admit evidence of Reardon's possession of all of the weapons found during the search of his home.[1] Contrary to Reardon's argument, the probative value of this evidence—proof of intent to make a true threat—is not substantially outweighed by the danger of unfair prejudice.

Federal Rule of Evidence 403 permits the Court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the

---

[1] This includes the submachine gun similar to that used in the video, the M-16 firearm, the M-16 pellet gun with a bayonet attached to the end of it, the shield, and the Hitler youth knife.

3

issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  The evidence at issue here is highly probative because it goes directly to an element of the offense—intent to communicate a true threat—which is the primary contested issue in the case.  Specifically, Section 875(c) prohibits the transmission "in interstate or foreign commerce [of] any communication containing any threat to kidnap any person or any threat to injure the person of another . . . ." 18 U.S.C. § 875(c).  In order to prove a violation of this provision, the government must prove that Reardon transmitted the communication either with the purpose of issuing a true threat or with knowledge that the communication would be understood as a true threat.  *Elonis v. United States*, — U.S. —, 135 S. Ct. 2001, 192 L.Ed.2d 1 (2015).  In other words, the government must prove that Reardon's posting of the video insinuating a mass shooting at the JCC was not merely a joke.

Evidence of Reardon's possession of the firearms, shield, and knife found in his basement helps prove that.  He intended to make a true threat of violence against the JCC that is consistent with his beliefs, as opposed to merely making a joke.  Specifically, Reardon's possession of weapons and Nazi memorabilia, including the Hitler youth knife, increases the likelihood that he would carry out a violent act like the one threatened in the video.  This, coupled with Reardon's beliefs and his willingness to use force at the Rally in support of those beliefs, supports the reasonable inference that he meant to communicate a true threat of violence.

The highly probative value of the evidence at issue is not outweighed by the prejudice it may cause.  The jury will already see a video of Reardon firing an assault rifle.  That he possessed other guns and a knife will therefore not be unduly prejudice.  *See, e.g.*, *United States v. Bonds*, 12 F.3d 540, 573 (6th Cir. 1993) ("indeed, it would be difficult to countenance excluding as unfairly prejudicial a gun with an obliterated serial number in a prosecution for

4

possession of a firearm with an obliterated serial number"). Moreover, any prejudice can be cured by a limiting instruction. Accordingly, evidence of other weapons found in Reardon's home is admissible under Federal Rule of Evidence 403.

Reardon's reliance on *United States v. Goliday*, 145 F. App'x 502 (6th Cir. 2005) in arguing the contrary is unavailing. *Goliday* in fact illustrates the propriety of admitting evidence of other firearms when it is relevant to proving intent to commit a non-firearms offense. Recognizing that drug dealers often possess firearms as tools of the trade, the court in *Goliday* upheld the admission of evidence of a handgun, ammunition, and bullet-proof vest found during the search of the defendant's home where the defendant was charged with possession with intent to distribute cocaine. *Id*. at 507. In so doing, the court found that the firearm, ammunition, and vest constituted evidence of the defendant's intent to engage in the drug trade. *Id*. Similarly, as explained above, evidence of Reardon's possession of weapons is probative evidence of his intent to communicate a true threat. *Goliday* therefore supports the admission of the evidence at issue here.

Additionally, Reardon's assertion that the evidence is inadmissible because the JCC was not aware of the threat at the time it was made is meritless. It is well established that the victim need not ever be aware of the threat for the defendant to be found guilty of Section 875(c). *United States v. Houston*, 683 F. App'x. 434, 438 (6th Cir. 2017) ("A statement need not be communicated to the targeted individual in order to constitute a 'true threat.'") (citation omitted); *see also United States v. Jeffries*, 692 F.3d 473, 477 (6th Cir. 2012), *abrogated in part by Elonis*, — U.S. —, 135 S. Ct. 2001, 192 L.Ed.2d 1 (2015) (same). Indeed, Section 875(c) is all about *the defendant's intent* when making the threat. *Elonis v. United States*, — U.S. —, 135 S. Ct. 2001, 192 L.Ed.2d 1 (2015) (Section 875(c) requires showing that defendant intended to issue a

5

threat or knew that his communication would be viewed as a threat). And as explained above, evidence of Reardon's possession of weapons other than that used in the video is highly probative of his intent to communicate a true threat. Accordingly, the Court should deny Reardon's request to exclude that evidence.

### III. Conclusion

For the foregoing reasons, the Court should deny Reardon's Motion in Limine Relative to Other Weapons, Doc. No. 31.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By: /s/ Ranya Elzein
Ranya Elzein (OH: 0090887)
David M. Toepfer (OH: 0068008)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3929
(216) 522-8355 (facsimile)
Ranya.Elzein@usdoj.gov

6

CERTIFICATE OF SERVICE

    I hereby certify that on this 16th day of December 2019 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

                                            /s/ Ranya Elzein
                                            Ranya Elzein
                                            Assistant U.S. Attorney